Filed 11/15/22 P. v. Ayala CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. JUAN DAVALOS AYALA, Defendant and Appellant. | 2d Crim. No. B317249 (Super. Ct. No. F000201307001) (San Luis Obispo County) |

Juan Davalos Ayala appeals from the trial court's denial of his motion to vacate two 28-year-old convictions. He contends the motion should have been granted pursuant to either Penal Code[1] section 1473.7 or section 1016.5. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In 1993, prosecutors charged Ayala with gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a); count 1) and leaving the scene of an accident involving injury or death (Veh. Code, § 20001, subd. (a); count 2) after he slammed into the rear

---

[1] Unlabeled statutory references are to the Penal Code.

of a vehicle, killed its driver, and fled on foot. He was held to answer on both charges at the preliminary hearing. During a discussion at the conclusion of that hearing, prosecutors noted that there was a "border patrol hold" on Ayala.

Prosecutors subsequently added a charge of vehicular manslaughter (§ 192, then-subd. (c)(3); count 3) to the two charges in the complaint. They reached a plea deal with Ayala two months later. Before accepting the plea, the trial court asked Ayala if he was a United States citizen. He said that he was not. The court then asked if Ayala "underst[oo]d that if [he was] convicted . . . that [his] conviction may result in exclusion from the country, deportation, and denial of citizenship." Ayala said that he understood. He also said that he had spoken with his attorney about the case. He then pleaded no contest to counts 2 and 3, and the court dismissed count 1.

Twenty-eight years later, Ayala—purportedly then in federal custody and immigration removal proceedings—moved to vacate his convictions pursuant to section 1473.7, claiming that plea counsel[2] "did not properly inform [him] of the immigration consequences that would accompany [his] plea." Nor did Ayala "recall speaking about the immigration consequences" of his plea with counsel or about the fact that "he was not a U.S. citizen." The trial court that accepted his plea similarly "did not properly advise [him] that [he] was subject to detention or possible denial of relief, voluntary departure, bar from reentry, and/or any other [immigration] consequence." Had counsel or the court properly advised him, Ayala would have either gone to trial or negotiated an alternate, immigration-neutral plea.

_____

[2] Different attorneys represented Ayala at the preliminary hearing and during plea proceedings.

2

Plea counsel testified at the November 2021 hearing on Ayala's motion. He said that he did not recall representing Ayala, did not recall telling Ayala that he could be placed in deportation proceedings or denied naturalization if he pleaded no contest, and did not recall advising Ayala to speak to an immigration specialist. Based on his practices at the time, however, counsel believed that he would have told Ayala that he could be denied citizenship if he pleaded because it was generally his practice to advise a client about the adverse immigration consequences of certain convictions.

Ayala also testified at the hearing. He said that he immigrated to the United States from Mexico in 1989, when he was 19 years old. His mother and two sisters remained in Mexico; his father and two brothers resided in Los Angeles. Ayala had no children at the time of his August 1993 plea but was expecting his first later that year.

Ayala did not recall how many times he met with counsel before entering his plea. The two never discussed his citizenship status or the potential immigration consequences of a plea. Counsel did not tell him that he could be deported as a result of his plea, that the plea could affect his ability to adjust his status, or that he should speak to an immigration specialist. Ayala nevertheless admitted that he "would . . . have taken the plea" even if he had known that he could have "contested [his] case and sought relief in immigration court."

On cross-examination, and contrary to the sworn declaration attached to his motion, Ayala testified that he was not currently in federal immigration custody or removal proceedings; the last time he was in federal custody was 1994. He did not recall that the prosecutor at the preliminary hearing

3

in his 1993 case stated that there was a "border patrol hold" on him.  He did recall that he was intoxicated when he committed the offenses underlying that case, however, and that he fled the scene because did not want to get arrested.  He said he took the plea offered to him because he committed the charged crimes.  He understood that the evidence against him was "overwhelming."

The trial court denied Ayala's motion.  It found Ayala "was not a credible witness."  Ayala had a "convenient memory" and "either lied or made a serious mistake when he said in his declaration . . . that he was . . . currently in immigration removal proceedings and in federal immigration custody."  He did not meet his burden of showing that he was entitled to section 1473.7 relief.

## DISCUSSION

### *Section 1473.7*

Ayala contends the trial court should have granted his section 1473.7 motion because he has shown: (1) that he did not understand the immigration consequences of his plea, and (2) a reasonable probability that he would not have pleaded no contest had he understood those consequences.  We disagree.

A person who is no longer in custody may move to vacate a prior conviction if that conviction was "legally invalid due to prejudicial error damaging the [person's] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of" their no contest plea.  (§ 1473.7, subd. (a)(1).)  For a court to grant a section 1473.7 motion, the moving party must show, by a preponderance of the evidence, that they could not understand, defend against, or accept the immigration consequences of their plea.  (§ 1473.7, subd. (e)(1).)  The party must also show that their conviction

4

either "is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (*Ibid*.)  In other words, a person seeking section 1473.7 relief must show a "reasonable probability that [they] would have rejected [a] plea if [they] had correctly understood its actual or potential immigration consequences." (*People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).)

To determine whether a person has established prejudicial error under section 1473.7, courts consider the totality of the circumstances.  (*Vivar*, *supra*, 11 Cal.5th at p. 529.)  "Factors particularly relevant to this inquiry include the [moving party's] ties to the United States, the importance the [party] placed on avoiding deportation, [their] priorities in seeking a plea bargain, and whether [they] had reason to believe an immigration-neutral negotiated disposition was possible." (*Id*. at pp. 529-530.)  Other relevant factors include the moving party's ties to their home country at the time of the plea (*People v. Manzanilla* (2022) 80 Cal.App.5th 891, 912), the party's immigration status (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 80-81), their criminal history (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1011 (*Camacho*)), and their employment history (*People v. Soto* (2022) 79 Cal.App.5th 602, 611).

Our review is independent.  (*Vivar*, *supra*, 11 Cal.5th at p. 527.)  But that does not mean that we will "second-guess factual findings that are based on the trial court's own observations"; factual and credibility determinations made during section 1473.7 proceedings are entitled to "particular deference."  (*Vivar*, at pp. 527-528.)  "Where . . . the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the

5

question at issue; as a practical matter, 'the trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record." (*Id.* at p. 528, alterations omitted.) "Ultimately it is for [this] court to decide, based on [our] independent judgment, whether the facts establish prejudice under section 1473.7." (*Ibid.*)

Ayala fails to make the requisite showings here. As to his purported lack of understanding of the immigration consequences of his plea, at the preliminary hearing prosecutors said that Ayala was subject to a "border patrol hold." Nothing in the record shows that Ayala did not hear or understand that statement. To the contrary, at the subsequent plea hearing Ayala said that he had spoken with his attorney (who typically advised his clients about the potential immigration consequences of certain convictions) and that he understood that his conviction could "result in exclusion from the country, deportation, and denial of citizenship." Those representations and their acceptance by the court that took Ayala's plea constitute "formidable barrier[s]" to granting a section 1473.7 motion. (*Blackledge v. Allison* (1977) 431 U.S. 63, 73-74.)

To overcome those barriers, Ayala now asserts that he does not recall the prosecutor's statements at the preliminary hearing, discussing his case with counsel, or telling the trial court that he understood that his plea may have immigration consequences. But he has not directed us to any contemporaneous evidence to corroborate these assertions. (See, e.g., *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664; *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1134.) They were thus properly rejected as incredible. (*People v. Martinez* (2013) 57 Cal.4th 555, 565.)

6

Ayala also fails to show prejudice. Ayala committed the crimes underlying his plea just four years after he moved to the United States. He points to nothing in the record showing that during those four years he strengthened his ties to the United States, severed the ties to his friends and family who remained in Mexico, or prioritized avoiding deportation. Ayala also points to no evidence showing that he took steps toward gaining legal immigration status or developed strong employment ties to the United States.

Additionally, while Ayala had only a minor criminal history when he committed the crimes underlying his plea, nothing in the record shows that he believed an immigration-neutral possible plea was on the table. Rather, at his section 1473.7 hearing Ayala testified that he accepted the plea in his case because he committed the charged crimes and understood that the evidence against him was "overwhelming." He even admitted that he would have pleaded no contest even if he had known that he could have instead "contested [his] case and sought relief in immigration court." The record thus does not indicate that Ayala "'would have chosen to lose the benefits of the plea bargain despite the possibility or probability [that adverse immigration consequences] would nonetheless follow.'" (*Camacho, supra*, 32 Cal.App.5th at p. 1010; see, e.g., *People v. Garcia* (2022) 79 Cal.App.5th 1059, 1066 [prejudice not shown where contemporaneous evidence failed to show that prosecutors would have agreed to immigration-neutral disposition and evidence against defendant was "'very strong'"].)

This case is unlike *Vivar, supra*, 11 Cal.5th 510, on which Ayala relies. The *Vivar* defendant immigrated to the United States when he was just six years old. (*Id.* at p. 530.) He had

been in the country for 40 years by the time he entered his plea, during which time he got married and had two children and two grandchildren. (*Ibid.*) He "had virtually no ties to Mexico, spoke Spanish 'like an American,' and found it 'difficult to function in Mexican society because people treat[ed] him like an outsider.'" (*Ibid.*, alterations omitted.)

Additionally, trial counsel's contemporaneous notes corroborated the defendant's concerns about the immigration consequences of his plea. (*Vivar, supra*, 11 Cal.5th at p. 530.) Those notes also indicated that prosecutors offered a plea deal that could have avoided adverse immigration consequences. (*Id.* at p. 531.) The totality of the circumstances thus showed a "reasonable probability" that the defendant would have rejected the plea if he had understood its immigration consequences. (*Ibid.*) The circumstances here show the opposite.

### Section 1016.5

Ayala alternatively contends the trial court should have vacated his no contest plea pursuant to section 1016.5. The contours of this contention are not precisely clear. Ayala appears to argue: (1) the immigration advisement given during his plea colloquy erroneously omitted the phrase "pursuant to the laws of the United States," and (2) the omission of that phrase prejudiced him.

But Ayala did not present this contention during the proceedings below—indeed, a reference to section 1016.5 appears nowhere in Ayala's motion or the transcript of the hearing on that motion. Ayala also fails to support his contention with any reasoned argument or citation to relevant legal authority. The contention is forfeited. (*People v. Suarez* (2020) 10 Cal.5th 116, 149 [arguments raised for the first time on appeal are forfeited];

*People v. Reardon* (2018) 26 Cal.App.5th 727, 740 ["the failure to explain with particularity how a claimed error caused prejudice forfeits the claim"].)

DISPOSITION

The trial court's order denying Ayala's motion to vacate his convictions, entered November 15, 2021, is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.

YEGAN, J.

Teresa Estrada Mullaney, Judge

Superior Court County of San Luis Obispo

_____

Law Offices of Zulu Ali & Associates, Karin Khachatorian and Whitney Ali for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Steven D. Matthews and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.